IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.                                                 Criminal No. 1:09-cr-5-HSO-JMR-6

DONALD RYDELL

**ORDER DENYING DEFENDANT DONALD RYDELL'S MOTION [208] TO REDUCE SENTENCE**

BEFORE THE COURT is Defendant Donald Rydell's Motion [208] to Reduce Sentence, which is in substance a request for compassionate release. Defendant requests that his sentence be reduced because he is the only available caretaker for his mother and wife, and because he is susceptible to serious illness were he to contract COVID-19. *See* Mot. [208] at 5–13. Having considered Defendant's arguments, the Government's Response [215], Defendant's Reply [222], the record, and relevant legal authority, the Court finds that the Motion [208] should be denied.

I. BACKGROUND

On June 24, 2009, Defendant Donald Rydell ("Defendant") pled guilty to one count of Conspiracy to Commit Bank Fraud, pursuant to a Plea Agreement [86] with the Government. Minute Entry, June 24, 2009. On October 5, 2009, Defendant was sentenced to 43 months in prison, to run consecutively with his sentence in a separate Florida state case, Court Docket No. 08021318CF10A,

1

followed by four years of supervised release. Doc. [112]. Defendant's projected release date is January 24, 2026. Ex. [215-1] at 1.

On May 15, 2023, Defendant filed the instant pro se Motion [208] to Reduce Sentence under 18 U.S.C. § 3582(c). Defendant claims that his mother "is in failing health" and "is suffering from a terminal illness, including but not limited to cancer." Mot. [208] at 8. He also states that his wife has multiple sclerosis and is "bedridden," *id.* at 9, and that he is the "sole available caregiver to aid his ailing mother and wife," *id.* at 8. Additionally, Defendant argues that the COVID-19 pandemic is an extraordinary and compelling circumstance justifying release because he has "several chronic illness[es] including Organic Brain Damage, Anxiety, and Depression Disorder," which render him at a "heightened risk of becoming severely ill and/or dying should he contract COVID-19." *Id.* at 12.

In its Response [215], the Government argues that Rydell lacks sufficient evidentiary support that his family members require his care. Resp. [215] at 5. The Government asserts that, in a letter written by Defendant's mother, which is attached to Defendant's Motion [208] as Exhibit [208-1] (citing Ex. [208-1] at 15–16), "his mother states that she can drive short distances." *Id.* The Government also points out that Defendant does not present evidence showing that no one could drive Defendant's mother to a physician for treatment. *Id.* And while Defendant's exhibits indicate his mother has a cyst and needs further examination of her kidney, "the documentation does not show that she currently needs round the clock or onsite care." *Id.* at 6. Concerning Defendant's wife, the Government contends

that Defendant has not produced any documentary evidence establishing that she has any of the health issues that Defendant claims she has. *See id.* at 6.

The Government also argues that Mr. Rydell's claim that he is especially susceptible to COVID-19 lacks merit because he has received four vaccinations and, therefore, any pre-vaccination risk of serious illness that might have sufficed as an extraordinary circumstance justifying compassionate release no longer exists. *Id.* at 7–8 (citing *United States v. Rodas*, No. 1:18CR30-HSO-RHW-3, 2022 WL 2751531, at *3 (S.D. Miss. July 13, 2022) (collecting cases)). The Government notes "that the Defendant stated in his motion that he has been in close contact with two inmates who tested positive for COVID-19 and yet it appears the Defendant did not contract the virus, or if he did, he was asymptomatic and did not know he had it," so that he "himself shows that the vaccines he took are working to protect him from COVID-19." *Id.* at 10.

The Government alternatively contends that the Court should deny the Motion [208] because the sentencing factors enumerated in 18 U.S.C. § 3553(a) weigh against Defendant's release. *Id.* at 10. The Government points to Defendant's Presentence Investigation Report ("PSR") [108], which reveals he has six prior convictions for cocaine possession dating back to 1997, a 2002 conviction for grand theft, and a 2009 conviction for carjacking, robbery, and fleeing law enforcement. *Id.* at 12. The Government also emphasizes that Defendant's conviction in this case involved using fake names, other peoples' identities, and known stolen checks to unlawfully obtain money. *Id.* at 11. Because Defendant

3

presents a danger to the community, the Government argues, the § 3553(a) factors weigh against granting compassionate release. *See id.*

In a counseled Reply [222], Defendant argues that the Court should consider the need to care for his mother an extraordinary and compelling circumstance justifying compassionate release, even though the applicable policy statement governing family circumstances at the time he filed his Motion [208], U.S.S.G. § 1B1.13 cmt. n.1(C) (2018), mentions care for spouses but not parents. Reply [222] at 3–5. Notably, the Sentencing Commission has updated its Policy Statement to include a defendant's need to care for his incapacitated parent when no other caregiver is available. *See* U.S.S.G. § 1B1.13(b)(3)(C) (including "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" as an extraordinary and compelling reason justifying compassionate release). The Reply [222] also emphasizes that Defendant has demonstrated that he has rehabilitated himself by participating in programs on Life Skills, Personal Finance, Victim Impact, and Anger Management in Florida state prison, and by not receiving any disciplinary reports. Reply [222] at 6–7, 10–11. Defendant accordingly argues the § 3553(a) factors weigh in favor of his release. *Id.*

Regarding § 3582(c)'s requirement that Defendant "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf," or that 30 days lapsed "from the receipt of such a request by the warden of [Defendant's] facility," Defendant contends that the Bureau of Prisons

4

never responded to his March 2, 2023, email to the Warden of his prison requesting compassionate release, which he attached as an exhibit to his Motion [208], Mot. [208] at 5 (citing Ex. [208-1] at 1).  The Government states that the acting Warden "responded with a letter denying Defendant's request" on March 30, 2023.  Resp. [215] at 2 (citing Ex. [215-3]).  That letter instructed Defendant that if he was unsatisfied with the Warden's response, he could "appeal [the] decision through the Administrative Remedy Process."  Ex. [215-3] at 2.  Without otherwise taking a position on exhaustion, including whether Defendant did not pursue available administrative remedies within the Bureau of Prisons, the Government states in a footnote: "While Defendant's email request may not technically qualify as exhausting his administrative remedies, for the purpose of responding to this motion, the government will treat the email request as if it did."  Resp. [215] at 2 n.1.

Defendant contends in his Reply [222] that emailing the Warden and receiving a response denying his request qualified as exhausting his administrative remedies, even though he does not contend he appealed the Warden's decision.  *See* § 3582(c)(1)(A) (providing that "the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment").  But the Government waived exhaustion, Resp. [215] at 2 n.1, so the Court will proceed to the merits of Defendant's claim, *see Hamer v. Neighborhood Housing Services of Chicago,* 583 U.S. 17, 20 (2017) ("[M]andatory

claim-processing rules must be enforced, but they may be waived or forfeited."); *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (concluding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule, and therefore can be waived or forfeited by the government) (citing *Hamer*, 583 U.S. at 20).

## II.  DISCUSSION

A.  Whether Defendant has shown an extraordinary and compelling circumstance justifying release

A sentencing court may reduce a term of imprisonment on motion by a defendant for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).  The Fifth Circuit has held

> that a prisoner seeking compassionate release must overcome three hurdles.  First, "extraordinary and compelling reasons" must justify the reduction of his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a).  *Id.*

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022).  A "district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction."  *Id.*  And "the defendant has the burden to show circumstances meeting the test for compassionate release."  *United States v. Crandle*, No. CR 10-35-SDD-RLB, 2020 WL 2188865, at *3 (M.D. La. May 6, 2020).

In the First Step Act, signed into law in 2018, Congress amended § 3582 to permit prisoners to file motions for compassionate release directly; prisoners previously needed to rely on the Bureau of Prisons to move for a sentence reduction

under the statute. *See United States v. Shkambi*, 993 F.3d 388, 391–92 (5th Cir. 2021). Between the First Step Act's enactment and the November 1, 2023, amendment to the Sentencing Guidelines, in considering a motion for compassionate release, a district court was "bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Id.* at 393. The Fifth Circuit held that the then-applicable policy statement, contained in the commentary to United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 (2018), only enumerated the extraordinary and compelling reasons justifying a sentence reduction for compassionate release motions filed by the Bureau of Prisons.[1] *See id.* The Court of Appeals based this holding on the 2018 Policy Statement's language, which stated that it only applied to "motion[s] of the Director of the Bureau of Prisons." *Id.* at 392 (quoting U.S.S.G. § 1B1.13 (2018) (alteration in original)). The Policy Statement had not been revised since the enactment of the First Step Act to state that it applied to motions filed by prisoners. *See id.* Between 2018 and November 1, 2023, then, there was no "applicable policy statement[] issued by the Sentencing Commission" that a prisoner's sentence reduction needed to be "consistent with." § 3582(c)(1)(A). But during that period, the Sentencing Commission's policy statement could still "inform the district court's analysis" of the merits of compassionate release motions. *Jackson*, 27 F.4th at 1090.

---

[1] Before November 1, 2023, "[t]he comments to the U.S.S.G. provide[d] four 'extraordinary and compelling reasons' that may justify reducing a prison term: (1) medical conditions, (2) age, (3) family circumstances, and (4) '[o]ther [r]easons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (2018)).

Because the Sentencing Commission has issued a new Policy Statement, U.S.S.G. § 1B1.13 (2023), which explicitly applies "[u]pon motion of . . . the defendant," *see* § 1B1.13(a), there is now an "applicable policy statement[] issued by the Sentencing Commission," § 3582(c)(1)(A). Defendant filed his Motion [208] to Reduce Sentence before the November 1, 2023, amendment establishing an applicable policy statement, which explicitly recognizes a parent's health condition as an extraordinary and compelling circumstance, § 1B1.13(b)(3)(C), but also defines, and thus limits, legally cognizable reasons for compassionate release, *see* § 3582(c)(1)(A). In fairness to Defendant, the Court will assume that his Motion [208] asserts legally cognizable "extraordinary and compelling reasons" for a sentence reduction. Even assuming that is so, Defendant fails to support his assertions with sufficient evidence, and in any event, the § 3553(a) factors weigh against his release. *See Jackson*, 27 F.4th at 1089.

1.   <u>Defendant's assertions that he is the only caregiver for his mother and wife</u>

Defendant does not cite evidence demonstrating that his mother has the extent of health issues that he claims in his Motion [208], which include that she has terminal cancer and cannot care for herself. *See* Mot. [208] at 8. He includes a letter from his mother outlining her current health conditions. Ex. [208-1] at 15–16. Although his mother wrote in her letter that she had cancer in 2020, she wrote that she has "come back from" it, though she still sees a doctor multiple times a month. Ex. [208-1] at 15. She states that she struggles with daily activities, including cooking and self-care, and can only drive short distances. *Id.* She also wrote that she is bedridden at times, that her son is the only person she has to help care for

8

her, and that Defendant's father has passed away. *Id.* The PSR [108] states that Defendant's father passed away in 2002, and that Defendant is an only child. PSR [108] at 28. His mother's medical records, dated March 21, 2023, indicate she has a cyst in her left kidney and required a CT scan or MRI. *Id.* at 2.

Defendant does not provide sufficient evidence to show that his mother's health conditions justify reducing his sentence. His mother's letter indicates she does not have terminal cancer. *See* Ex. [208-1] at 15. While she has significant health issues, the record does not show that she cannot care for herself at all, and the letter does not demonstrate why no other potential caregivers are available. The record therefore does not support that Defendant's mother's health conditions require the Court to reduce his sentence.

Defendant likewise supplies no documentation or other evidence that his wife has medical issues. Nothing in Defendant's exhibits discusses his wife's health. *See generally* Ex. [208-1]. While Defendant asserts he cannot access his wife's medical records from the Jacksonville, Florida Mayo Clinic because of their marital status, *see* Mot. [208] at 9, it is his burden to show that she has a condition requiring that he be released to care for her, *Crandle*, 2020 WL 2188865, at *3. Defendant does not establish why no other caregivers exist for his wife, and the PSR [108] reveals that the couple had three children together, suggesting the possibility that their children could care for Defendant's wife. PSR [108] at 28. To the extent that Defendant and his wife are separated, or if they are now divorced, that should weigh against finding that her health issues justify reducing Defendant's sentence.

9

*See id.* (discussing how, as of Defendant's sentencing in 2009, Defendant and his wife were separated but not divorced). The Court accordingly finds that Defendant has not established that his wife or mother's health conditions justify reducing his sentence under § 3582.

2.  <u>Whether Defendant's claimed susceptibility to COVID-19 is an extraordinary and compelling circumstance justifying release</u>

Defendant argues he is especially susceptible to COVID-19 in prison, and therefore should be released. *See* Mot. [208] at 12. As an initial matter, "'[b]oth international and domestic health authorities, particularly the World Health Organization, the United States Centers for Disease Control and Prevention, and the federal government, have made clear that the COVID-19 pandemic has ended.'" *United States v. Casey*, No. 1:15-CR-1-LG-RHW-2, 2023 WL 4306765, at *2 (S.D. Miss. June 30, 2023) (alteration in original) (quoting *United States v. Ruiz*, No. 4:19CR269-DSJ, 2023 WL 3628265, at *5 (E.D. Tex. May 24, 2023)). Second, "[f]ear of COVID doesn't automatically entitle a prisoner to release[,]" *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021), because if the Court were to "release every prisoner at risk of contracting COVID-19" it "would then be obligated to release every prisoner[,]" *United States v. Turner*, No. 2:15-CR-1-KS-MTP, 2022 WL 1072880, at *3 (S.D. Miss. Apr. 8, 2022). Except for rare and exceptional cases, the COVID-19 pandemic was not an extraordinary and compelling circumstance justifying release while it was ongoing, and the pandemic certainly is not one now that it has ended.

Defendant does not demonstrate that he should be an exception to this general rule. He cites his PSR [108] in stating he has organic brain damage, anxiety, and depression, rendering him especially susceptible to COVID-19, but he does not explain *how* these conditions put him at a heightened risk of COVID-19. *See* Mot. [208] at 12; Reply [222] at 5–6. Even assuming his claim to be especially susceptible to COVID-19 is medically supportable, the Court agrees with the Government that Defendant's vaccination status ameliorates any heightened risk he experiences due to COVID-19 infection. *See Rodas*, 2022 WL 2751531, at *3.

B. <u>The applicable factors set forth at 18 U.S.C. § 3553(a) weigh against Defendant's release</u>

Even if Defendant had presented evidence of an extraordinary and compelling circumstance under 18 U.S.C. § 3582(c)(1)(A)(i), the § 3553(a) factors weigh against his release. These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.

*United States v. Chambliss*, 948 F.3d 691, 693 n.3 (5th Cir. 2020) (citing 18 U.S.C. § 3553(a)).

The defendant has the burden "to 'convince the district judge to exercise discretion to grant the motion [for compassionate release] after considering the [Section] 3553(a) factors.'" *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021)

(alteration in original) (quoting *Shkambi*, 993 F.3d at 392). Defendant's contentions that he has completed educational programs in prison, that he lacks a record of any disciplinary problems, and that his conviction in the *present* case was nonviolent, *see* Reply [222] at 6–11, do not establish that the § 3553(a) factors favor his release. Defendant was convicted in this case of Conspiracy to Commit Bank Fraud under 18 U.S.C. § 1349, Final Judgment [112], and the conspiracy involved cashing fake checks using stolen identification materials, *see* PSR [108] at 9–13. Just because fraud is nonviolent does not mean that it does not present a danger to the public. *See United States v. Grant*, No. CR 16-00172-01, 2023 WL 2993009, at *4 (W.D. La. Apr. 18, 2023) (concluding that a defendant's financial crimes showed she "still pose[d] a danger to the community, as financial and pecuniary crimes do endanger the public").

In addition, Defendant's criminal history is extensive. His prior convictions include several for cocaine possession dating back to 1997, a 2002 conviction for grand theft, and a 2009 conviction for carjacking, robbery, and fleeing law enforcement. PSR [108] at 16–23. Defendant was also convicted of misdemeanor forgery in 1994. *Id.* After serving a prison sentence beginning in 2002, he was released on probation before it was revoked in March 2004, after which he was in prison until June 2006. *Id.* at 20–22. Defendant then committed the bank fraud in this case in 2007, *id.* at 10–12, and his car-jacking, robbery, and fleeing-state-officials offenses in January 2008 occurred with the same woman with whom he conspired to commit bank fraud, *id.* at 10–12, 23. That Defendant committed these

other offenses with the same person with whom he conspired to commit bank fraud reaffirms the Court's concern about protecting the public. *See* § 3553(a)(2)(C). Defendant was evidently a career criminal who was undeterred by shorter prison sentences for his prior convictions; this leads the Court to conclude that releasing Defendant before the end of his sentence would undermine respect for the law, create a risk of harm to the public, and undermine general deterrence. *See* § 3553(a). Any rehabilitation does not outweigh these factors.

In sum, Defendant was convicted of a serious offense, and the sentence imposed in this case reflects that seriousness, as well as the need for deterrence and protection of the public given his criminal history under the applicable factors set forth at § 3553(a). Considering the totality of the record before it, the Court finds that reducing Defendant's sentence would not reflect the gravity of the offense, protect the public, or afford adequate deterrence. 18 U.S.C. § 3553(a). Defendant's Motion [208] to Reduce Sentence should be denied.

## III.  CONCLUSION

To the extent the Court has not addressed any of Defendant's remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Donald Rydell's Motion [208] to Reduce Sentence is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 8th day of April, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE